The first case this morning is 523-0568, People v. Chatman. Arguing for the appellant is Yasmin Navi. Arguing for the appellee is Jessica Theoratos. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk of the court is permitted to record these proceedings today. Morning, everybody. Morning. Good morning. All right, appellant, if you are ready to proceed, you may do so. Thank you very much. Good morning, Your Honors. Good morning, counsel. My name is Yasmin Navi for James Chatman on behalf of the State Appellant Defender. Your Honors, Mr. Chatman's pro se post-conviction petition, which post-conviction counsel formally adopted, set forth a substantial showing that direct appeal counsel was ineffective for failing to challenge trial counsel's actual conflict of interest. This issue was spread of record. There are two elements that are required for an actual conflict. Both of them were established by the record. First, the parties all recognized at the proceedings below that trial counsel's candidacy for Macon County State's attorney, particularly given its closeness in time, could in fact amount to an actual conflict of interest. And they broached the subject at several hearings, pretrial hearings, one of which Mr. Chatman was not present for. He also filed the pro se motion in this regard. Importantly, however, at none of those times was Mr. Chatman advised by the court of the potential, the impact of that conflict upon his case, upon the candidacy. Not surprisingly, the appellate court on direct appeal found that even though Mr. Chatman insisted on or accepted to go to trial on Mr. Hassinger's chosen trial date, he did not clearly understand the ramifications of going to trial with incomplete GSR test results. That ruling is now arguably law of the case and binding on this court. But even if you don't look at that, Mr. Chatman himself at that hearing explicitly refused to waive the conflict of interest and said he would not sign any evidence to this or any documentation to that effect. Remember, we're at the PC stage. The record must positively rebut strong presumption against waiver. It simply does not do that here. Certainly not where there's evidence that this, that Mr. Chatman was adversely affected. Again, in this regard, it is important to note that both and post-trial defense counsel made clear that these GSR test results were in fact essential. The only time that he did not claim that they were essential and was ready to go forward was during the critical period of trial, when again, his own personal interest in the election, which was just around the corner, prevented him from waiting one short month when the full test results could have been available. The prosecutor had advised him of this dutifully throughout the proceedings, yet that personal interest went out. And therefore, we see that this record supported an actual conflict of interest claim. Ms. Devay, this issue was raised by the state in a motion in limine and there was a hearing held where your client indicated he was aware of the potential conflict and wanted to proceed. So I don't understand how you can argue that he was not aware. And there were several instances, as you admit, where this was raised. Your Honor, as I indicated just a moment ago, those hearings, he was, first of all, he was present at two of those hearings. And there was only one time where they actually discussed it in terms of a conflict of interest. That was on August 18th. And at that time, there were two separate conflicts that were discussed. Beyond the fact that he expressly refused, he expressly refused to waive that conflict, Your Honor. Didn't he just, didn't he simply expressly refuse to sign anything? But that doesn't mean he still didn't waive it. No, he didn't. He appellate court. And again, I thought he said, I'm good with it. He was good with going forward with trial. And in fact, importantly, Your Honor, I directed to the fourth district appellate court decision, which looked at this very same exchange under a similar circumstance. And they found that though Mr. Chapman agreed to go to trial on Mr. Hassinger's chosen trial date, he did so without clearly understanding the ramifications of going to trial with incomplete GSR testing. That ruling is law of the case. It is part of this record. And it also shows that there is no waiver. Again, waiver here, Your Honors, of a constitutional right as important as the right to conflict-free counsel is based on an intentional relinquishment of a known right. The record positively does not show that. And again, the adverse effect I touched upon earlier is clearly evident. Now, the state in addressing this argument has never disputed the sufficiency of Mr. Chapman's pro se pleadings. They have forfeited the right to do so at any time. But if this court finds that those pleadings are insufficient at all in any way, shape, or form, then this court should find post-conviction counsel unreasonable, especially given the other failures of post-conviction counsel. Post-conviction counsel did not advance this meritorious actual conflict claim at the proceedings on the state's motion to dismiss. Instead, it opted to pursue a procedurally defaulted and patently refuted due process claim. That due process claim, beyond being an inherent tension with the conflict claim, was spread of record, fully litigated at the hearing on the defendant's motion to dismiss, and was the subject of a detailed response motion by the state itself, chock full with discovery and with email exchanges, which showed that the prosecutor dutifully turned over these items that were subject to the agreed order, that the investigator submitted them to the Illinois State Crime Lab almost immediately thereafter, and the defendant knew at the September 1st, several weeks before trial, that the test results were incomplete, and in fact wouldn't be complete until October 31st. But again, his own personal interest in the election at that time outweighed any of his ethical duties to his clients. Certainly on this record, to pursue such a meritless claim is the definition of unreasonable assistance, particularly where even if this claim had merit, post-conviction counsel did not avoid forfeiture by including an ineffective assistance of appellate counsel claim. Finally, post-conviction counsel did not pursue the necessary GSR testing that the fourth district appellate court had held defendants should pursue, and in fact, which defendant, per se, even attempted to pursue during the post-conviction proceedings. That's important both to the due process claim that post-conviction counsel felt strongly enough to add to a supplemental petition, and to the ineffective assistance of trial counsel claim that the appellate court told the defendant to pursue. So your honors, as you can see, under both of these issues, Mr. Chapman believes that he's entitled to a full evidentiary hearing on the conflict of interest claim, but at the very least, he's entitled to second stage proceedings. My time is running out. I'm just going to briefly touch upon the third issue of the brief, the failure to investigate and present the exculpatory testimony of Harvey Johnson and Michael Nixon in particular. Those two witnesses would have provided critical evidence to support the notion that Mr. Chapman acted in self-defense, and that either Keosha McGowan, who originally provided exculpatory evidence and then backtracked by the time of trial, ran out of the house with a gun, the College Street apartment where the shooting happened, with a gun. Now, while there was some evidence of both Keosha McGowan and the decedent had guns, no one saw them with guns that day. This evidence, this non-cumulative and very material evidence would have advanced defendant's self-defense claim. And while there was sufficient evidence to convict, it certainly would have tipped the balance in favor of Mr. Chapman, where his defense was otherwise uncorroborated. And there was no strategic reason for not calling these witnesses. So Mr. Chapman is entitled to an evidentiary hearing on this basis as well. So if there are no further questions, I will just ask you to reverse and remand for an evidentiary hearing. Thank you very much. Justice Case, any further questions? Just to have one. Couldn't it have been trial strategy not to call these witnesses because of their prior convictions and the nature of their testimony? Trial strategy, if there, we only defer to trial strategy if the record reveals a trial, a strategic reason. The record reveals nothing whatsoever. And in decisions people be Willingham, and which I cited in my reply brief, the court indicated in the absence of a fully developed record, there must be, we don't defer to trial strategy, certainly not at this stage of the post-conviction proceedings, where all unrebutted allegations are looked upon favorably in light, in the most favorable light to the defendant. This is the kind of thing that needs to be developed at an evidentiary hearing. And that's why both of these two claims need to proceed to an evidentiary hearing. Thank you. Thank you. Justice Welch, any questions? No questions. All right. You will be given time for rebuttal. Applee, you may proceed. Thank you. May it please the court. Good morning. My name is Jessica Theodoratos and I represent the people. The first issue defendant alleges is that he made a substantial showing that appellate counsel was ineffective for failing to allege that trial counsel, Mr. Hassinger was ineffective due to his running for state's attorney while representing defendant. The burden is on defendant to establish in his post-conviction petition that a conflict existed during trial that rendered trial counsel's performance ineffective. But the issue of trial counsel's running for state's attorney was brought up by the people's motion in limine prior to trial, in which they sought inquiry into whether a conflict existed. And then it was defendant who made very clear that he was aware of trial counsel's candidacy and wanted to continue with his representation. There is no case law to support that participation in an upcoming political election creates a conflict of interest. No actual conflict exists here. Furthermore, the error that defendant points to that defense counsel sped to trial without waiting for all of the gunshot residue results because of the conflict of interest is without merit. At the June pre-trial hearing, all the parties were made aware that the GSL results would not be back, but they wanted to schedule trial. And it is true that defendant was not present at that particular date. But then at the August pre-trial date with defendant present, it was explained to defendant that defense counsel had an upcoming election. And then while defendant said he was not waiving any conflict due to Hassinger's candidacy, he also immediately said, I do not have a problem with it, and then agreed to continue with his representation. Here under these specific facts, defendant cannot demonstrate that a plausible alternative would have been pursued had the conflict not existed. Defendant was made aware of counsel's candidacy and chose to proceed to trial instead of waiting any longer and obtaining new counsel. The doctrine of invited error applies. In defendant's reply brief, the situation of defendant's acceptance of Mr. Hassinger's continued representation was described as defendant's begrudging acquiescence. But begrudging acquiescence is acquiescence all the same. Begrudging acquiescence satisfies the participation requirement for the invited error doctrine. Defendant proceeded with Mr. Hassinger as his attorney, knowing about his upcoming candidacy, and cannot now turn around and argue that the way he agreed to proceed was anything other than his own invited error. But alternatively, it's unclear whether defense counsel's decisions were due to his upcoming election or whether defense counsel realized that the items were not essential to believe that the people acted improperly in producing the evidence. During trial, when defense counsel elected to proceed with only two of the GSR results back, defense counsel tried to argue that it was the people's fault all of these items are not tested. This issue was addressed in a hearing on defendant's motion in the middle of trial. Defense counsel argued that the people violated the discovery order by not having produced all of the results, but the trial court simply denied the motion. It is unclear if Mr. Hassinger rushed to trial due to his candidacy or because he believed the people were going to produce the items. Ultimately, the trial court properly dismissed defendant's petition because no conflict existed, and if one did exist, defendant waived the conflict by agreeing to Mr. Hassinger's continued representation. Turning to the second issue, post-conviction counsel was not- Let me stop you before you do that. You just said it was unclear whether Mr. Hassinger proceeded to trial under one scenario or the other, so if the state says it's unclear, then why wouldn't we remand for third stage evidentiary hearing? Your Honor, that was just a quick alternative argument because I truly believe that this is a situation where no conflict exists, and even clearer than that is that defendant waived any conflict existable, but I do think that there is an argument to be made given that the record provides that defense counsel was adamant about certain things, that he thought that the records were going to be produced, and his emails do negate what he said at the hearing, but there is a potential argument to be made that perhaps he did not rush to trial due to his candidacy. So, if that is a potential argument, it would be clarified during a third stage evidentiary hearing because it was clear at the motion in limine hearing that he was going to be on vacation the week of his election, or the week after, and so that period of time when the gunshot residue results were going to be available, he wasn't going to be available, so they had to reschedule it. So, they didn't have to. If I remember correctly, the election was November 7th, and he was taking the week after that off, so he could have waited for the gunshot residue results. But he didn't, and we're not sure why. He pushed things up. It's true, Your Honor. Okay, thank you. The second issue, post-conviction counsel was not unreasonable for properly shaping the claims to claim that trial counsel was operating under a conflict of interest. On direct appeal, post-conviction counsel argued defense counsel was ineffective but did not argue ineffectiveness based on a conflict of interest. Rather, ineffectiveness was argued based on numerous reasons, all supported by the record. And post-conviction counsel cannot be considered ineffective for not advancing a claim of conflict of interest, as I've argued previously, because no conflict existed. Finally, turning to the third issue, defendant did not make a substantial showing that trial counsel was ineffective for failing to investigate witnesses. The four alleged witnesses provided affidavits which in no way contradicted the evidence offered at trial. So, trial counsel's failure to call them would have had absolutely no impact on the outcome of trial. The evidence at trial provided defendant and his brother entered the victim's residence because the victim robbed defendant's son. Then, defendant pushed into the victim's room, shot him multiple times, and fled. The only affidavit that could offer defendant anything new was Harvey Johnson's affidavit which claimed he saw McGowan, the person who was also in the room with the victim, with a gun after the shooting. But McGowan was tested for a GSR, and this credibility issue was likely why Mr. Hassinger-Colt chose not to call Mr. Johnson. And the other proposed statements were extremely limited and could only be considered cumulative. Defendant cannot establish that he was prejudiced by defense counsel's failure to obtain these as a trial because the outcome of trial would not have been different. In conclusion, the people asked this court to affirm defendant's conviction and sentence. Are there any questions that I could answer at this time? I do have another question. The fourth district in the direct appeal stated that the ineffective assistance of counsel claims pertaining to the gunshot residue issue would be better served through collateral proceedings. So the fourth district acknowledged that the post-conviction process might be the better avenue. And we do have the state interfering with the timing of the results as to certain gunshot residue results. What do you say about that? From my point of view, the record makes clear that the people were rushing to get these results as quickly as they could. I don't believe that they engaged in any sort of discovery violation. What about the fact that they didn't test the bags around the hands and didn't really notify the defendant that they weren't going to do that? Oh, they said that they had sent all of the items months prior to, I believe, the June hearing, where it became clear that all of the items were not coming back. And then after the June hearing, there were some emails back and forth where the people said, I've put in a rush on the most important pieces of evidence, and those are probably going to come back by October 30th. And then two of the items came back before trial, after they had already agreed to go to trial without any of the evidence. So I don't believe that the people could have done anything differently. You don't believe that the people could have notified the defendant that there weren't going to be any gunshot residue testing on the bags of the hands? I think that that was made clear that if they were proceeding to trial, that those results would not be given over before trial. Thank you. Justice Welch, any questions? If they weren't given over, they weren't even tested. Yeah, they were sent to the crime lab. Did they send them? I thought they didn't send them. I believe that they sent the bags to the crime lab, but then the forensic scientists testified that he never tests the bags. Okay. All right. Thank you, Counselor Rebuttal. Yes, Your Honors. Very quickly, just to clarify one point. The state has just admitted an oral argument that there is no due process violation, and how they did that is saying that the prosecutor made no error whatsoever in submitting the GSR evidence to be tested. They are absolutely right, which makes it all the more unreasonable for post-conviction counsel to then raise this claim in derogation of the actual conflict claim, which has merit. Turning to that, the state's principal argument, waiver-invited error. Again, I direct this court to the attention of the Fourth District Appellate Court's opinion, which is finding that though the defendant reluctantly agreed to go forward with Mr. Hassinger's chosen trial date, he did so without clear understanding of the implications of not having all of the GSR testing, which, by the way, in contradiction to the state's attorney's argument here, were deemed essential by defense counsel, both pre- and post-trial. He repeated that argument post-trial because he knew how important those arguments were. The only time he abandoned it was during trial, and he indicated very clearly that October 31st, he would be out until the November 8th, not 7th election, November 8th. He was out because he was concerned about his election. It's hard to see of a more clear-cut actual conflict of interest claim being presented by the record. Certainly, as Justice Cates points out, even the prosecutor here admits that there is question about this. We need an evidentiary hearing to fully develop this claim. The defendant has more than met his burden of presenting substantial evidence of an evaluation. Finally, the state goes on. They don't really have an argument as to the unreasonable assistance of post-conviction counsel. In fact, as I indicated at the outset, their argument supports a notion that there is ineffective assistance. As Justice Cates and Welch have noted, the GSR testing was never completed because defense counsel insisted on going forward to trial before the full results were available or would have been available, which the prosecution dutifully advised the defense counsel that they would be ready October 31st. Again, the personal conflict got in the way. As for the final issue that the affidavits did not contradict the evidence of trial, again, the state here is misrepresenting the standard. That's not the standard. I will direct the court's attention to my reply brief where I address this issue directly and head-on. That is not the standard, as long as it would have materially advanced in a case where there was a lot to be wanting. There was evidence that the crime scene and, in fact, the decedent's body had been manipulated. There was evidence that someone may have fired a gun. This evidence that the two plausible, one alternative suspect and the decedent who was to have been shot, who Mr. Chapman claimed shot at him first, might have had a weapon, was not cumulative in any way, shape, or form, and would have materially advanced. Again, there are too many questions that need to be addressed by these pleadings, the records. I strongly believe in my client's need for an evidentiary hearing to resolve the issues relating to the actual conflict. As to case law, that's one final point I'd like to make. The parties themselves acknowledged that an actual conflict could lie. Even the state's own case of people being dogged suggests that while a per se conflict isn't applicable in such a case, an actual conflict could lie. That's beyond dispute. We need to explore these issues more fully at an evidentiary hearing, or at the very least, alternatively, at further second stage proceedings. Thank you, and I appreciate your honor's time. Any further questions, Justice Cates? No, thank you. Justice Welch? No questions. Thank you very much for your arguments. We will take this matter under advisement and issue a ruling in due course. Thank you very much.